## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

JENNIFER B.,

        **Plaintiff,**

                                   **Case No. 1:20-cv-20364**

  **v.**                        **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security**[1],

        **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Jennifer B. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On June 20, 2018, Plaintiff filed her application for benefits, alleging that she has been disabled since April 4, 2017. R. 78, 91, 160−61. The application was denied initially and upon

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

reconsideration. R. 98–102, 104–06. Plaintiff sought a *de novo* hearing before an administrative

law judge. R. 107–08. Administrative Law Judge ("ALJ") Lisa Hibner Olson held a hearing on

January 23, 2020, at which Plaintiff, who was represented by counsel, testified, as did a

vocational expert. R. 33–66. In a decision dated July 22, 2020, the ALJ concluded that Plaintiff

was not disabled within the meaning of the Social Security Act from April 4, 2017, Plaintiff's

alleged disability onset date, through the date of that decision. R. 15–25. That decision became

the final decision of the Commissioner of Social Security when the Appeals Council declined

review on November 9, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. §

405(g). ECF No. 1. On April 26, 2021, Plaintiff consented to disposition of the matter by a

United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules

of Civil Procedure. ECF No. 8.[2] On that same day, the case was reassigned to the undersigned.

ECF No. 9. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g)m 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

Under the substantial-evidence standard, a court looks to an existing administrative

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

> record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

3

whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at \*4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of*

*Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see*

*K.K.*, 2018 WL 1509091, at \*4.  The ALJ decision thus must be set aside if it "did not take into

account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp.

at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

  Although an ALJ is not required "to use particular language or adhere to a particular

format in conducting [the] analysis," the decision must contain "sufficient development of the

record and explanation of findings to permit meaningful review."  *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at \*4. The Court "need[s] from the ALJ not only an

expression of the evidence s/he considered which supports the result, but also some indication of

the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication

of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice."  *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, a court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

**B.    Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act through September 30, 2021. R. 17. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between April 4, 2017, her alleged disability onset date, and the date of the decision. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status-post ulnar nerve surgery, status-post lumbar fusion, reflex sympathetic dystrophy syndrome, and lumbar radiculopathy. *Id.* The ALJ also found that Plaintiff's migraines, depressive disorder, and generalized anxiety disorder were not severe impairments. R. 17–19.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 19–21.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 21–24. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a legal secretary, substitute teacher, and title clerk. R. 24–25. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from April 4, 2017, her alleged disability onset date, through the date of the decision. R. 25.

Plaintiff disagrees with the ALJ's findings at steps two and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 12; *Plaintiff's Reply Brief*, ECF No. 14. The Acting Commissioner takes the position that the decision should

be affirmed in its entirety because the decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 13.

## IV.   DISCUSSION

### A.   Step Two

Plaintiff challenges the ALJ's determination at step two that, *inter alia*, Plaintiff's mental impairments were not severe; she specifically complains that the ALJ failed to conduct a proper psychiatric review technique ("PRT") when considering those impairments. *Plaintiff's Memorandum of Law*, ECF No. 12, pp. 18−21; *Plaintiff's Reply Brief*, ECF No. 14, pp. 3−5.[3] Plaintiff's arguments are not well taken.

At step two, an ALJ determines whether the claimant has a "severe impairment" or combination of impairments that "significantly limits [her] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted). So long as the ALJ finds that "any single impairment meets the severity threshold required at step two, any error the ALJ made in this determination was harmless." *Auriemma v. Colvin*, No. 13-5947, 2015 WL 5097902, at *6 (D.N.J. Aug. 31, 2015) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); *see also Hicks v. Colvin*, No. 2:15-cv-07221, 2016 WL 8674251, at *8 (D.N.J. Oct. 14, 2016) ("Even if the ALJ had in

---

[3] Plaintiff's challenges to the ALJ's RFC in connection with her mental impairments are addressed later in this Opinion and Order.

fact erred with respect to one of the impairments that she found to be non-severe, such error would be harmless since she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in her RFC finding.").

At step two, the ALJ concluded that Plaintiff's mental impairments were not severe, explaining as follows:

> The claimant's medically determinable mental impairments of depressive disorder and generalized anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.

> In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

> The first functional area is understanding, remembering or applying information. In this area, the claimant has a mild limitation. The claimant completed two years of college and has no history of special education (1E/3). She has no diagnosed cognitive impairments. She had no trouble following instructions. Her limitations with attention were due to pain (3E/6). She was fully oriented (4F/2 [R. 397, the mental status examination performed by consultative examiner Christopher Williamson, Psy.D., on August 13, 2018]).

> The next functional area is interacting with others. In this area, the claimant has no limitation. The claimant spent time with others every day via phone or text. She stayed home due to pain. She denied problems getting along with others or with authority figures (3E). She was pleasant and cooperative with examiners (4F/2 [R. 397, Dr. Williamson's consultative examination]) and was cooperative during the hearing. She had positive relationships with family and she had friends (4F [R. 396–98, Dr. Williamson's consultative examination]).

> The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. Mental status examination showed there was no evidence of a formal thought disorder. There were no noted compulsions of thinking or behavior. Verbalizations were clear, coherent, and goal directed. She denies any issues of substance use or abuse. She could repeat up to 5 digits forwards and 4 digits backwards. She could complete simple mathematical calculations of addition and subtraction. Her overall fund of knowledge appeared to be in the average range (4F/2 [R. 397, Dr. Williamson's consultative examination]).

The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. The claimant reported limitations with activities of daily living, such as personal care, cooking, and cleaning, but all such limitations were due to pain, not depression and anxiety. She could drive, shop, and manage money. She used an emotional support dog, but explained that she made her dogs into emotional support dogs. She also cared for a cat (3E).

*Evidence shows some mental limitations. There were some isolated references to poor mental findings, such as depressed mood, thoughts of self-harm, and mood swings.* To the psychological consultative examiner, she reported being withdrawn and there were some deficits with cognitive testing (1F/93; 34F/3; 36F/1, 8).

*On the other hand, the record shows the claimant retains mental functioning.* Mental status examinations revealed many normal findings, to include full alertness and orientation, normal mood and affect, no mood swings, no suicidal or homicidal ideations, good sleep, normal memory, normal judgment and insight, normal behavior, and normal fund of knowledge (1F/4, 10, 73, 87; 34F/14, 23, 29; 40F/10, 13, 16, 39). To the psychological consultative examiner, the claimant reported living with her husband and having good family relationships. She was on time for her appointment and appeared well dressed and groomed. Her speech was good and she could perform most mental testing. Overall fund of knowledge appeared normal (4F [R. 396–98, Dr. Williamson's consultative examination]). Furthermore, there is no evidence that the claimant was ever psychiatrically hospitalized for the mental impairments.

At the hearing and in the Function Report, the claimant stated she had a driver's license, she could still drive short distances, and she could shop in stores and online. In addition, she could even assist in the care of pets and she continued to socialize. Further, she could do some cooking, light cleaning, handle her own finances, read, and get along with others (hearing testimony; 3E). Therefore, the claimant has the limitations in the "paragraph B" categories as set forth above.

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1)).

R. 18–19 (emphasis added). The Court finds no error with the ALJ's findings in this regard. *See Salles,* 229 F. App'x at 145 ("Beyond Salles's own testimony (about which the ALJ made properly-supported adverse credibility findings), there is no evidence that these four conditions resulted in functional limitations."); *Sleap v. Kijakazi*, No. CV 20-14002, 2022 WL 475874, at *7 (D.N.J. Feb. 16, 2022) (finding that substantial evidence supported the ALJ's finding at step

two that the claimant's depressive and anxiety disorders were non-severe where, *inter alia*, the claimant had no history of psychiatric hospitalizations, no prescription for psychotropic medications, the claimant could "drive, go out alone, handle her finances, play with her children, and shop online, among other things[,]" mental status exams were normal, there was "little mental health treatment overall[,]" and psychological consultative examinations revealed, *inter alia*, that the claimant "was appropriate, had logical and goal-directed thought processes, good to fair concentration, and excellent intellectual functioning and abstract thinking"); *Cruz Vargas v. Comm'r of Soc. Sec.*, No. CV 20-0587, 2021 WL 1541047, at *4–5 (D.N.J. Apr. 19, 2021) (concluding that substantial evidence supported the ALJ's step two finding that the claimant's mental impairments were not severe where there was no evidence of mental health treatment before her date last insured, that "evaluations were normal with the exception of some mild impairments[,]" and that medication helped the claimant's mental impairments) (internal quotation marks omitted); *Rolick v. Berryhill*, No. CV 17-4481, 2019 WL 625599, at *5 (D.N.J. Feb. 14, 2019) (finding that while the claimant "does have mental health conditions that undoubtedly produced symptoms, the ALJ had a more than adequate basis for concluding that those mental health conditions were not severe as that term is used within the Act" where the claimant's "mental health examinations demonstrated adequate mental functioning with intact thought processes, memory span, and concentration" and "[i]t would be inappropriate for this Court to substitute its own judgment in weighing the mental health evidence because the ALJ properly relied on substantial evidence in her determination that [the claimant's] mental health impairments were non-severe and caused only mild limitations").

Plaintiff challenges the ALJ's findings in this regard, and points to other medical evidence that she believes supports a finding of severe mental impairments as well as to her own

hearing testimony. *Plaintiff's Memorandum of Law*, ECF No. 12, pp. 20−21; *Plaintiff's Reply Brief*, ECF No. 14, pp. 3−5. However, as detailed above, the ALJ specifically considered that the record contained evidence showing "some mental limitations[,]" but nevertheless concluded that other evidence established that Plaintiff's mental impairments were not severe. In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). In addition, to the extent that Plaintiff relies on her own hearing testimony to support her step two argument, as discussed in more detail below, the ALJ properly discounted Plaintiff's subjective complaints and statements.

Plaintiff also contends that the ALJ, in finding that Plaintiff's mental impairments were not severe, did not properly consider the opinion of Christopher Williamson, Psy.D., the consultative examiner. *Plaintiff's Memorandum of Law*, ECF No. 12, p. 21; *Plaintiff's Reply Brief*, ECF No. 14, pp. 3−5.[4] Dr. Williamson, a clinical psychologist, conducted a mental status

---

[4] To the extent that Plaintiff challenges the ALJ's consideration of Dr. Williamson's evaluation in connection with the RFC determination, the Court addresses that challenge later in this Opinion and Order.

evaluation on August 13, 2018. R. 396–98. He reported his observations, diagnoses, and

conclusions as follows:

### Mental Status and Behavioral Observations

[Plaintiff] presented for evaluation as a 40-year-old female. She arrived on time as scheduled. She was casually dressed and groomed, appearing her stated age. She was pleasant and cooperative throughout. Her overall mood appeared depressed and anxious. Her affect was congruent. There was no evidence of a formal thought disorder. There were no noted compulsions of thinking or behavior. Verbalizations were clear, coherent, and goal directed. She has struggled with suicidal ideation but denies any current plan or intent. She denies any issues of substance use or abuse. She could repeat up to 5 digits forwards and 4 digits backwards. She was unable to accurately complete Serial 7's, subtracting 7 from 100 in reverse order. She could complete simple mathematical calculations of addition and subtraction. Her overall fund of knowledge appeared to be in the average range. Abstract reasoning appeared dull. She was well oriented to time, place, and person as well as recent current events. She could recall 2 out of 3 common objects at 5- and 10-minute intervals.

### Diagnostic Considerations

[Plaintiff] presented for evaluation as a 40-year-old female currently struggling with ongoing issues of chronic pain. She struggles with ongoing issues of depression and anxiety but was unable to afford current treatment.

### Diagnosis

| | |
|---|---|
| AXIS I: | Major Depressive Disorder. |
| | Generalized Anxiety Disorder. |
| AXIS II: | Deferred. |
| AXIS III: | Chronic pain, left elbow injury, spinal stenosis, and back injury. |
| AXIS IV: | Financial, housing, and employment. |
| | Chronic medical and ongoing psychiatric concerns. |

### Conclusionary Comments

Based on my interactions with [Plaintiff], it does appear that she is competent to handle her own funds at the present time should it be determined applicable. Her overall prognosis remains guarded due to the chronicity of her current symptom presentation.

R. 397. Plaintiff contends that Dr. Williamson's diagnoses, his documentation of her ongoing

mental health issues, and his "overall characterization of her mood as sad, down, despondent,

13

and hopeless" compels a finding that her mental impairments are severe. *Plaintiff's Memorandum of Law*, ECF No. 12, p. 21.

Plaintiff has not persuaded this Court that remand is required on this basis. As detailed above, the ALJ considered Dr. Williamson's evaluation but specifically noted conflicting evidence in the record regarding Plaintiff's mental health. R. 18–19. The ALJ resolved that conflict by pointing to substantial evidence that Plaintiff's mental impairments were not severe. This Court may not reweigh that evidence. *See Johnson*, 497 F. App'x at 201; *Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880.

Moreover, even if the ALJ erred in finding at step two that Plaintiff's mental impairments were not severe, any such error is harmless because the ALJ found that other impairments were severe. R. 17. The ALJ continued to evaluate Plaintiff's impairments through the remainder of the five-step sequential evaluation. R. 18–25. Accordingly, Plaintiff has not shown that the ALJ erred at step two when assessing Plaintiff's mental health impairments.

### B.     RFC and Plaintiff's Subjective Statements

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination for a number of reasons. *Plaintiff's Memorandum of Law*, ECF No. 12, pp. 10–25; *Plaintiff's Reply Brief*, ECF No. 14, pp. 1–5. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence.

14

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with additional limitations. The claimant can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and occasionally stoop, balance, crouch, kneel, and crawl. The claimant must avoid concentrated exposure to extreme heat or cold. The claimant must be afforded the opportunity to alternate from a sitting or standing position during the workday, every 1 hour for 5 minutes, at a site in proximity to the workstation or to perform a job which is posturally immaterial and can be performed at either sitting or standing. The claimant can have no exposure to workplace hazards such as moving machinery or unprotected heights.

R. 21. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, Plaintiff's testimony that she has a driver's license and can drive, that she has an associate's degree, that she stopped working when her office closed, that she does limited laundry and grocery shopping, that she prepares meals, dusts the house, watches television with some concentration issues as a result of pain, uses a computer and has Facebook and Instagram accounts to keep up with family and friends, and that she performs crafts even though she has some issues with sitting; Plaintiff assists in the care of her pets; she underwent surgery of the left

ulnar nerve in April 2014 but physical examinations of the left upper extremity showed normal range of motion, painless range of motion, normal capillary refill, and no pain upon provocative maneuvers; imaging and EMG testing showed no abnormalities; while the record reflects that Plaintiff was evaluated for sympathetic dystrophy syndrome of the left upper extremity, there was little evidence of limitations in coordination or use of the left upper extremity; Plaintiff underwent lumbar spine fusion surgery in 2018, which helped alleviate her symptoms; while the record reflects a few positive straight leg raises and other provocative maneuvers, Plaintiff had good range of motion; imaging of the spine showed minimal narrowing of the disc space between the L5 and S1 and some minimal bulging, but no factures, dislocation, spondylosis, or spondylisthesis and no impingement of the dural sac or nerve root; providers described Plaintiff's degenerative disc disease as "mild"; Plaintiff generally presented with a normal gait and examinations showed normal muscle strength, tone, and sensation. R. 22–23. The ALJ also expressly stated that she had "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." R. 18. The ALJ went on to conclude as follows:

> In sum, the residual functional capacity is supported by the claimant's statements, the evidence of record, and some of the opinions. Specifically, the undersigned notes that the claimant retains normal gait, muscle tone, strength, and sensation. She remains independent in daily activities with some assistance. Following her surgeries, the claimant's treatment has been routine. The claimant has had success at pain control with medications for a time, and currently, medical marijuana alone. Therefore, the claimant's residual pain and limitations can be accommodated by the above light residual functional capacity.

R. 24. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

16

Plaintiff, however, argues that this RFC determination is not supported by substantial evidence because, among other things, the ALJ did not take into account the condition of status-post ulnar nerve surgery. *Plaintiff's Memorandum of Law*, ECF No. 12, pp. 14−16; *Plaintiff's Reply Brief*, ECF No. 14, pp. 1−2. Plaintiff specifically contends that the ALJ's failure to include any limitations−such as reaching, fingering, handling, or feeling−in the RFC flowing from this severe impairment renders "the Decision inconsistent on its face." *Plaintiff's Memorandum of Law*, ECF No. 12, p. 14; *see also id.* at 15; *Plaintiff's Reply Brief*, ECF No. 14, pp. 1−2.

Plaintiff's arguments are not well taken. As a preliminary matter, the United States Court of Appeals for the Third Circuit has instructed that "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019). Because the RFC is the most that a claimant can do despite her limitations, the RFC analysis "'requires a more detailed assessment [of the areas of functional limitation] by itemizing various functions contained in the broad [functional limitation] categories'" and, "unlike the findings at steps two and three, the RFC 'must be expressed in terms of work-related functions[.]'" *Id.* (quoting SSR 96-8P, at *4, 6). "In short, the findings at steps two and three will not necessarily translate to the language used at steps four and five." *Id.* Here, Plaintiff relies on generalized finding by a treating physician, Bruce Monaghan, M.D., who stated in March 2009 that "I do not believe she [Plaintiff] is able to return to job without restrictions." *Plaintiff's Memorandum of Law*, ECF No. 12, p. 15 (citing R. 575). However, Dr. Monaghan's statement, which was rendered approximately eight years prior to Plaintiff's alleged disability onset date, does not specify any particular work restrictions that he thought were necessary. R. 575; *see also* R. 42 (reflecting Plaintiff's hearing testimony that

17

she continued to work full-time until 2015 when her office closed and then worked part-time

jobs thereafter until 2017). Nor does Plaintiff point to any medical opinion or functionality

finding supporting limitations in the areas of reaching, fingering, handling, or feeling flowing

from her ulnar nerve surgery. *Plaintiff's Memorandum of Law*, ECF No. 12, pp. 15−16;

*Plaintiff's Reply Brief*, ECF No. 14, pp. 1−2. Notably, and as previously discussed, an ALJ need

include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Grella v.

Colvin*, No. 3:12-CV-02115-GBC, 2014 WL 4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he

ALJ cannot accommodate limitations which do not exist, or which cannot be found in the

medical record. No specific functional limitations were provided by any of Plaintiff's medical

sources with respect to her carpal tunnel syndrome[.]") (internal citation and quotation marks

omitted).

      Plaintiff also contends that the ALJ erred when she failed to find persuasive the opinions

of treating physicians Barrett Woods, M.D., Plaintiff's back surgeon, and Peter Pryzbylkowski,

M.D., Plaintiff's pain management specialist. *Plaintiff's Memorandum of Law*, ECF No. 12, pp.

16−18; *Plaintiff's Reply Brief*, ECF No. 14, pp. 2−3. Plaintiff summarizes Dr. Woods' treatment

and findings as follows:

> After a long period of physical therapy, pain management and injections, he
> performed an Anterior Lumbar Interbody Fusion at L5-S 1 using titan interbody
> and allograph - on August 24, 2018. (R. 410-411). This was not his initial treatment
> plan and was only done as a last resort. In fact on June 13, 2018 Dr. Woods
> indicated that an anterior interbody fusion at the L5-S 1 would be a "last case
> scenario" as it would likely not improve her symptoms. (R. 369-370). He only
> proceeded with fusion after Plaintiff failed to get relief from pain management. (R.
> 384). He reported that "I will consider surgical intervention on her now since <u>she
> has tried everything I have asked her to do</u>, physical therapy, multiple injections. In
> addition, she has weaned herself completely off narcotics." (R. 368, emphasis
> added). Sadly, post-op Ms. Bowell's pain complaints continued. On September 26,
> 2018 Dr. Woods indicated that Plaintiff "is developing reflex sympathetic
> dystrophy," that "I cannot even touch her lower extremities," and that "she is having
> a lot of axial back pain." (R. 456). He sent her to pain management and for a RSD

18

evaluation. (R. 456). She returned January 16, 2019 and was still having the same axial back pain. (R. 418 - 419, 543 – 454 [sic][5]).

*Plaintiff's Memorandum of Law*, ECF No. 12, p. 16‒17 (emphasis in original); *see also Plaintiff's Reply Brief*, ECF No. 14, p. 2 (citing R. 368‒70). Plaintiff complains that "[t]here is absolutely no discussion of the findings of Dr. Woods, an orthopedic specialist, who indicated significant positive findings outlining the nature and extent of the Plaintiffs physical symptoms and functional loss that hinders the Plaintiff's daily activities." *Id.* at 17. Plaintiff also observes that Dr. Pryzbylkowski "noted that the claimant had no relief with traditional pain modalities in the past. (R. 436)." *Plaintiff's Memorandum of Law*, ECF No. 12, p. 18. According to Plaintiff, the ALJ's failure to consider these medical findings of both treating physicians was particularly harmful because they were consistent with Plaintiff's subjective complaints. *Id.* at 17‒18. In response, the Commissioner argues that the ALJ was not required to consider the persuasiveness or supportability of these physicians' statements because they do not qualify as "medical opinions" of functionality. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 13, pp. 14‒15.

The Commissioner's argument is well taken. For claims filed after March 27, 2017,[6] a "medical opinion is a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in her ability to perform the physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions); ability to perform mental demands of work

---

[5] It is not immediately apparent to the Court what parts of the record Plaintiff intends to cite by referring to "543‒454." *Plaintiff's Memorandum of Law*, ECF No. 12, p. 17.
[6] As previously noted, Plaintiff's claim was filed on June 20, 2018.

activities, such as understanding, remembering, maintaining concentration, persistence, or pace, carrying out instructions, or responding appropriately to supervision, co-workers, or work pressures in a work setting; ability to perform other demands of work, such as seeing, hearing, or using other senses; and ability to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). With the revision of the Commissioner's regulations, "symptoms, diagnosis, and prognosis were removed from the definition of 'medical opinions.'" *Shawna Ann J. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1098, 2021 WL 733804, at \*5 (W.D.N.Y. Feb. 25, 2021) (*comparing* 20 C.F.R. § 404.1527(a)(1) *with* 20 C.F.R. § 404.1513). "These categories were removed because 'diagnoses and prognoses do not describe how an individual['s] functions' and symptoms are 'subjective statements made by the individual, not by a medical source.'" *Id.* (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 F.R. 5844-01).

In addition, the new regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

20

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(2).

The applicable regulations further require an ALJ to articulate his or her "consideration of medical opinions and prior administrative medical findings" and to also articulate in the "determination or decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). "Specifically, the ALJ must explain how he [or she] considered the supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how he [or she] considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec*., No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

In the case presently before the Court, the statements of Dr. Woods and Dr. Pryzbylkowski do not qualify as medical opinions that the ALJ was required to evaluate under

21

20 C.F.R. § 404.1520c. As detailed above, these statements reflect Plaintiff's subjective statements, diagnoses, and medical treatment and are not opinions of functionality, or statements of those activities that Plaintiff can or cannot perform in a work setting. The ALJ was therefore not required to assess the persuasiveness or supportability of these statements under 20 C.F.R. § 404.1520c. *See* 20 C.F.R. § 404.1513(a)(2); *Scheel v. Comm'r of Soc. Sec.*, No. CV 20-5077, 2021 WL 4477163, at *4 (E.D. Pa. Sept. 30, 2021) ("Dr. Shipkin's letter does not qualify as a medical opinion that the ALJ was required to evaluate. Indeed, Dr. Shipkin never opined on Scheel's functional limitations or what activities she could or could not perform in a work setting, or otherwise articulated Scheel's work-based limitations. Accordingly, Dr. Shipkin's letter does not contain an 'opinion' as defined in the regulations."); *Shawna Ann J.*, 2021 WL 733804, at *5 ("[T]he statements Plaintiff claims the ALJ impermissibly ignored are not work-related functional limitations, but check-box categories of symptoms. . . . Therefore, the section of the form containing a list of Plaintiff's diagnostic criteria and symptoms supportive of a diagnosis of PTSD is not a medical opinion, but rather other medical evidence under 20 C.F.R. § 404.1513 and the ALJ was not required to assess the statements as medical opinions.").

In any event, although the ALJ did not expressly mention Dr. Woods, the ALJ nevertheless considered evidence from this physician when crafting Plaintiff's RFC. R. 22 (citing, *inter alia*, Exhibits 5F/11 [R. 411], 11F/4 [R. 456]), 23 (citing, *inter alia*, Exhibit 2F/9 [R. 373], 5F/7 [R. 406], 11F/7 [R. 459]). And, even though the ALJ did not expressly consider Dr. Pryzbylkowski's statement that Plaintiff had "[n]o relief with traditional pain modalities in the past[,]" R. 436, that statement appears to have been based on Plaintiff's subjective complaints. *Id*. The mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion. *Hatton*,

131 F. App'x at 879 ("[A] medical source does not transform the claimant's subjective

complaints into objective findings simply by recording them in his narrative report[.]")

(summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F.

App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective

statements in a medical report does not elevate those statements to a medical opinion.") (citations

omitted); *Famularo v. Comm'r of Soc. Sec.*, No. CV 20-1655, 2021 WL 613832, at \*7 (D.N.J.

Feb. 17, 2021) ("[A] a claimant's own subjective report about her symptoms[] does not become a

medical opinion by virtue of being recorded in treatment notes.") (citations omitted). Plaintiff's

suggestion, *see Plaintiff's Memorandum of Law*, ECF No. 12, p. 18, that some unidentified

manipulative restrictions or other nonexertional limitations necessarily flow from Dr.

Pryzbylkowski's statement is therefore based on simple rank speculation unsupported by any

medical opinion.

Plaintiff also complains that, in crafting Plaintiff's RFC, the ALJ failed to consider

Plaintiff's mental impairments; Plaintiff argues that the ALJ should have accounted for

Plaintiff's limitations in the four functional areas of understanding, remembering, or applying

information, interacting with others, concentrating, persisting, or maintaining pace, and adapting

or managing oneself. *Plaintiff's Memorandum of Law*, ECF No. 12, pp. 18–21; *Plaintiff's Reply

Brief*, ECF No. 14, pp. 3–5. Plaintiff's arguments are not well taken. For the reasons previously

discussed, the ALJ properly found that Plaintiff had no limitation in her ability to interact with

others[7] and only mild limitations in the remaining three functional areas. R. 18. The Court "will

uphold the ALJ's decision even if there is contrary evidence that would justify the opposite

---

[7] Plaintiff erroneously represents that the ALJ found "mild limitations in all four areas of mental functioning." *Plaintiff's Reply Brief*, ECF No. 14, p. 4.

conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson*, 497 F. App'x at

201; *see also Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880. In any event, the ALJ

expressly considered these mild mental limitations when crafting Plaintiff's RFC:

> The limitations identified in the "paragraph B" criteria [at step two of the sequential
> evaluation] are not a residual functional capacity assessment but are used to rate the
> severity of mental impairments at steps 2 and 3 of the sequential evaluation process.
> The mental residual functional capacity assessment used at steps 4 and 5 of the
> sequential evaluation process requires a more detailed assessment. The following
> residual functional capacity assessment reflects the degree of limitation the
> undersigned has found in the "paragraph B" mental function analysis.

R. 19; *see also* R. 18 ("The undersigned considered all of the claimant's medically determinable

impairments, including those that are not severe, when assessing the claimant's residual

functional capacity."); R. 21 (the ALJ stated at step four that she considered "the entire record");

*see also* R. 23 (finding persuasive the opinions of the state agency psychological consultants that

Plaintiff had no severe mental impairments, noting that "there is not much mental health

treatment in the record, she generally had normal mental status findings, and she made

statements in support of good function"). "This discussion and incorporation by reference is

sufficient to satisfy the requirement that the ALJ consider all of the Plaintiff's impairments in

formulating the RFC." *D.C. v. Comm'r of Soc. Sec.*, No. CV 20-2484, 2021 WL 1851830, at *5

(D.N.J. May 10, 2021) (citations omitted); *see also Younge v. Berryhill*, No. CV 16-5271, 2017

WL 2978758, at *13 (E.D. Pa. May 31, 2017) ("The ALJ adequately discussed why plaintiff's

mental impairment was not severe, and was therefore not required to discuss the mental

impairment in the RFC evaluation. As such, we find that the ALJ properly formulated the RFC

assessment" where the ALJ included the same RFC discussion at step two as the ALJ in the present case).[8]

Plaintiff, however, complains that "[t]he ALJ specifically found [that] 'evidence shows some mental limitation' but, inconsistently, the RFC is silent altogether with respect to any mental limitations. (R. 18, 21)." *Plaintiff's Memorandum of Law*, ECF No. 12, p. 21. Plaintiff complains that this failure prejudiced her because she would not be able to perform her past relevant work, which was skilled or semi-skilled. *Id.* This Court disagrees. As noted earlier, "the findings at steps two and three will not necessarily translate to the language used at steps four and five[,]" *Hess*, 931 F.3d at 209, and an ALJ need include only "credibly established" limitations, *Rutherford*, 399 F.3d at 554. Accordingly, the Court cannot conclude that the ALJ committed reversible error when crafting Plaintiff's RFC and considering mild limitations flowing from her mental impairments. *See D.C.*, 2021 WL 1851830, at *6 ("[T]he Commissioner is correct that an RFC assessment does not need to contain in-depth analysis on mental impairments when the ALJ finds earlier in his opinion that a claimant's mental impairments are no greater than mild. . . . Thus, even if the ALJ's failure to analyze the mild mental limitations constituted an error, a dubious proposition, it still does not warrant reversal."); *Marchionna v. Comm'r of Soc. Sec.*, No. 13-329, 2015 WL 12550917, at *2 (W.D. Pa. Jan. 29, 2015) (finding "no error with respect to the failure to include social functioning limitations in the RFC" where

---

[8] In this regard, Plaintiff's reliance on *Kich v. Colvin*, 218 F. Supp.3d 342 (M.D. Pa. 2016) (citing *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004)) is misplaced. *Plaintiff's Reply Brief*, ECF No. 14, pp. 4–5. In *Kich*, the Court could not conclude that substantial evidence supported the RFC determination where, *inter alia*, "the ALJ essentially eliminated mental health related limitations without explanation[.]" *Id.* at 357. Conversely, in the present case, the ALJ adequately explained her consideration of Plaintiff's mild mental limitations when crafting the RFC. R. 18–19, 21; *see also D.C.*, 2021 WL 1851830, at *5; *Younge*, 2017 WL 2978758, at *13. *Kich* is therefore inapposite.

the Plaintiff had only "mild difficulties" in social functioning and a medical opinion to which the ALJ assigned great weight found that "Plaintiff was not significantly limited in any area of social interaction or adaptation").

Plaintiff goes on to argue that the RFC is deficient because the ALJ did not properly consider the opinion of Dr. Williamson, the consultative examiner who "diagnosed Major Depressive and Generalized Anxiety Disorder, [and] documented her ongoing issues with depression, struggles with suicidal ideation, and overall characterization of her mood as sad, down, despondent, and hopeless." *Plaintiff's Memorandum of Law*, ECF No. 12, p. 21 (citing R. 396–97). Again, the Acting Commissioner contends that Dr. Williamson's diagnoses and findings did not constitute a "medical opinion" under the applicable regulations and argues that, regardless, the ALJ considered Dr. Williamson's findings at step two. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 13, p. 20 (citing R. 18–19). In reply, Plaintiff frames the Acting Commissioner's argument as tantamount to the argument that Dr. Williamson "does not need to be considered[.]" *Plaintiff's Reply Brief*, ECF No. 14, p. 3. Plaintiff further argues that, if the ALJ believed that Dr. Williamson did not provide vocationally relevant information, the ALJ should have "Dr. Williamson subpoenaed to completed [sic] interrogatories or to appear at a Hearing to testimony [sic], or be contacted for an updated opinion" or, alternatively, order "a new consultative examination[.]" *Id*. at 3–4. Because the ALJ did not do any of these things, Plaintiff argues, the ALJ "inappropriately discard[ed] the report [that] the Agency asked for and paid for as irrelevant." *Id*. at 3.

Plaintiff's arguments are not well taken. As previously explained, for claims filed after March 27, 2017, a "medical opinion is a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [the claimant has] one or more

impairment-related limitations or restrictions" in her ability to perform the physical demands of work activities. 20 C.F.R. § 404.1513(a)(2). Symptoms–which are the claimant's subjective statements–as well as diagnosis and prognosis–which do not describe the claimant's functions– are therefore not "medical opinions" under the new regulations. *Shawna Ann J.*, 2021 WL 733804, at \*5. In the case presently before the Court, Plaintiff simply highlights Dr. Williamson's diagnoses and observations, as well as Plaintiff's symptoms. *Plaintiff's Memorandum of Law*, ECF No. 12, p. 21 (citing R. 396–97); *Plaintiff's Reply Brief*, ECF No. 14, p. 3. But these are not opinions of functionality. The ALJ therefore had no obligation to assess the persuasiveness or supportability of these statements under 20 C.F.R. § 404.1520c. *See* 20 C.F.R. § 404.1513(a)(2); *Scheel*, 2021 WL 4477163, at \*4; *Shawna Ann J.*, 2021 WL 733804, at \*5. In any event, as the Acting Commissioner also points out, the ALJ did expressly consider Dr. Williamson's findings at step two and did, as already explained, take those findings into account when she crafted Plaintiff's RFC. R. 18–19, 21.

Plaintiff's contention that the ALJ should have followed up with Dr. Williamson or ordered a new consultative examination is also unavailing. "ALJs have a duty to develop a full and fair record in social security cases." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). However, "[t]he burden lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (citations omitted); *see also Crocker v. Comm'r of Soc. Sec.*, No. CV 15-8231, 2017 WL 1181584, at \*4 (D.N.J. Mar. 29, 2017) ("[T]he ALJ need not search for all relevant evidence available 'because such a requirement would shift the burden of proof.'") (quoting *Lynn v. Comm'r of Soc. Sec.*, No. 12-1200, 2013 WL 3854460, at \*15 (W.D. Pa. July 24, 2013)). "The ALJ's only duty in this respect

is to ensure that the claimant's complete medical history is developed on the record before finding that the claimant is not disabled." *Money*, 91 F. App'x at 215 (citing 20 C.F.R. §§ 404.1512(d), 416.912(d)). "[W]here a claimant is represented by counsel before the ALJ, an ALJ's 'passivity in developing the record will only be sufficient for remand or reversal when it has clearly prejudiced the claimant.'" *Crocker*, 2017 WL 1181584, at *4 (quoting *Cartagena v. Comm'r of Soc. Sec.*, No. 10-05712, 2012 WL 1161554, at *4 (D.N.J. Apr. 9, 2012)). In addition, an ALJ retains the discretion, but not the duty, to order a consultative examination. *See Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002) ("The decision to order a consultative examination is within the sound discretion of the ALJ[.]"); *Woodside v. Berryhill*, No. CV 18-10, 2019 WL 4140993, at *1 (W.D. Pa. Aug. 30, 2019) ("As the decision to order a consultative examination is within the sound discretion of the ALJ, the Court finds that the ALJ did not err in finding that the record was sufficient to render a decision here without the need to order a consultative examination."); *Haganey v. Comm'r of Soc. Sec.*, No. CV 17-7944, 2019 WL 192901, at *2 (D.N.J. Jan. 15, 2019) ("Plaintiff cites to no Third Circuit case law or authority to support the argument that the ALJ was required to order the consultative examination. The record was sufficient for the ALJ to make a proper determination. Thus, the ALJ was not required to send Plaintiff for a consultative examination and acted within his discretion."); *Reliford v. Comm'r of Soc. Sec.*, No. CV 16-457, 2017 WL 2829604, at *9 (D.N.J. June 30, 2017) (rejecting the plaintiff's argument that the ALJ was required to order a consultative examination or recontact treating sources and stating that "Plaintiff is incorrect that the ALJ 'was under a duty' to further develop the record through any particular method"). For example, an ALJ may seek a consultative examination if the claimant's medical sources cannot or will not provide sufficient medical evidence, or to resolve an inconsistency in the evidence, or if the

evidence as a whole is insufficient to make a determination. 20 C.F.R. § 404.1517 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests.") (emphasis added); § 404.1519a(b) ("We *may* purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim.") (emphasis added), 404.1520b(b)(2)(iii) ("If the evidence in your case record is insufficient or inconsistent, we . . . *may* ask you to undergo a consultative examination at our expense") (emphasis added). Here, the ALJ implicitly and reasonably exercised her discretion in deciding that she had sufficient information on which to base a disability determination. R. 15−25. As an initial matter, counsel represented Plaintiff in the underlying proceedings and never asked the ALJ to subpoena Dr. Williamson following that physician's consultative examination, nor did Plaintiff or her counsel ask the ALJ to keep the record open and order a second consultative examination. R. 33−36, 94−97, 252−66. Moreover, in rendering her decision, the ALJ considered and summarized in exhaustive fashion the years of medical evidence already in the record, the hearing testimony, and other evidence, including Dr. Williamson's consultative examination report, evaluations by reviewing state agency medical consultants, and notes from treating mental health professionals which reflected, *inter alia*, only mild mental limitations. R. 18−19, 21−24. This Court finds that this record contained sufficient evidence regarding Plaintiff's impairments to permit the ALJ to make a disability determination and therefore concludes that the ALJ properly acted within her discretion when she did not follow up with Dr. Williamson or otherwise order a second consultative psychological examination. *See Money*, 91 F. App'x at 215; *Thompson*, 45 F. App'x at 149; *Haganey*, 2019 WL 192901, at *2; *see also Ali*

*v. Comm'r of Soc. Sec.*, No. CV 17-12911, 2019 WL 3369694, at *6 (D.N.J. July 25, 2019) ("An ALJ has no duty to request commissioner sponsored examinations merely because existing records do not establish disability.") (citations omitted).

In continuing to question the RFC determination, Plaintiff also challenges the ALJ's consideration of her subjective complaints, arguing that evidence supports these complaints. *Plaintiff's Memorandum of Law*, ECF No. 12, pp. 22−25. Plaintiff's arguments are not well taken. "Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence

relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[9]

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 21–23. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 22. As previously discussed, the ALJ detailed years of medical

---

[9]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility." SSR 16-3p. However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

evidence and record testimony to support her findings. R. 18−19, 21−24. The ALJ also specifically found that Plaintiff's subjective statements were not consistent with her generally normal examination findings and activities of daily living. R. 23.  In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff insists that the ALJ erred in her assessment of Plaintiff's subjective complaints by failing to consider Plaintiff's "outstanding work history[.]" *Plaintiff's Memorandum of Law*, ECF No. 12, pp. 24−25. The Court is not persuaded that this issue requires remand. The United States Court of Appeals for the Third Circuit has upheld an ALJ's evaluation of a claimant's subjective complaints where the ALJ did not "explicitly discuss his years of uninterrupted employment[,]" but where the ALJ did explain why other evidence in the record belied the claimant's subjective complaints. *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 177 (3d Cir. 2015); *see also Forcinito v. Comm'r of Soc. Sec.*, No. CIV. 12-6940, 2014 WL 252095, at *9 (D.N.J. Jan. 23, 2014) ("[W]ork history is only one of many factors the ALJ may consider in assessing claimant's credibility. . . . Work history is not dispositive of credibility and the question of credibility is left to the ALJ's discretion after considering all of the relevant factors.") (citations omitted). Here, as noted above, the ALJ detailed why other record evidence undermined Plaintiff's subjective complaints. Accordingly, the Court finds that the ALJ sufficiently explained her reasoning in evaluating Plaintiff's subjective complaints. The ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See id.*; SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a

claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.")
(citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*,
105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's
testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints
and cited Claimant's daily activities and objective medical reports"). The ALJ's assessment of
Plaintiff's subjective complaints will not serve as a basis for remand of this action. *Id.*

In short, for all these reasons, the Court concludes that the ALJ's findings regarding
Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the
record, as does her consideration of the findings of Dr. Woods, Dr. Pryzbylkowski and of Dr.
Williamson.

### C.   Past Relevant Work

Finally, Plaintiff argues that substantial evidence does not support the ALJ's
determination that Plaintiff could perform her past relevant work as a legal secretary, substitute
teacher, and title clerk because the ALJ failed to identify or resolve a conflict between the
vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). *Plaintiff's
Memorandum of Law*, ECF No. 12, pp. 25–26 (citing SSR 00-04p). Plaintiff specifically argues
that the vocational expert's testimony regarding the RFC's sit/stand option requirement[10] "is in
direct conflict with SSR 83-12" and ALJ's failure to resolve this conflict "led to a wrong Step 4
finding." *Id.*

---

[10] As detailed above, the ALJ's RFC determination requires that Plaintiff "must be afforded the
opportunity to alternate from a sitting or standing position during the workday, every 1 hour for
5 minutes, at a site in proximity to the workstation or to perform a job which is posturally
immaterial and can be performed at either sitting or standing." R. 21.

Plaintiff's arguments are not well taken. As a preliminary matter, the Court agrees with the Acting Commissioner, *see Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 13, pp 23–24, that Plaintiff's argument based on SSR 83-12 is unavailing. The purpose of that ruling is "[t]o clarify policies applicable in using the numbered table rules in Appendix 2 of Subpart P of the regulations as a framework [the Grids.]" SSR 83-12. An ALJ is required to apply the Grids "in cases where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work." 20 C.F.R. § 404.1569. Accordingly, SSR 83-12 is inapplicable in the present case because the ALJ found that Plaintiff could return to her past relevant work. *See id.*; *see also McGrane v. Colvin*, No. 2:14-CV-620-LSC, 2015 WL 4773812, at *4 (N.D. Ala. Aug. 13, 2015) ("SSR 83–12 also is only applicable when the plaintiff cannot perform her past work"); *Eaton ex rel. Est. DeTore v. Astrue*, No. 2:10-CV-464-GZS, 2011 WL 4544040, at *2 (D. Me. Sept. 28, 2011), *report and recommendation adopted by*, No. 2:10-CV-464-GZS, 2011 WL 5024473 (D. Me. Oct. 20, 2011) (stating that SSR 83–12 applies "to the determination of a claimant's capability to do 'other work'—in other words, to Step 5, rather than Step 4, determinations").

Plaintiff's reliance on SSR 00-04p is similarly unavailing. *Plaintiff's Memorandum of Law*, ECF No. 12, pp. 25–26. That ruling addresses only conflicts between a vocational expert's testimony and the DOT. *See* SSR 00-04p (explaining that this ruling's purpose is to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), . . . and explain in the determination or decision how any conflict that has been identified was resolved"). In this case, however, Plaintiff does not identify any such conflict. *See Plaintiff's Memorandum of Law*, ECF No. 12, pp. 25–26. Moreover, the DOT "does not include sit/stand options in job

34

descriptions." *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 177 (3d Cir. 2015) (citations omitted). "Accordingly, the ALJ did not erroneously fail to inquire into an explicit conflict between the VE's testimony and the DOT." *Id.*; *see also Kowal v. Saul*, No. CV 18-1350, 2020 WL 490962, at *3 (W.D. Pa. Jan. 30, 2020) ("Where the DOT is silent on an issue, however, a conflict does not exist."); *Phillips v. Berryhill*, No. CV 15-5204, 2017 WL 2224931, at *7 (E.D. Pa. May 22, 2017) ("The Third Circuit Court of Appeals has recognized that the DOT's silence with regard to the sit/stand option does not place it in conflict with jobs identified by a VE.").

Plaintiff also complains that the ALJ erred in her determination because unskilled work is unavailable to Plaintiff. However, the ALJ appropriately addressed that argument, as follows:

> After the hearing, the claimant's representative submitted a brief, in which the representative attempted to argue that no jobs were available to the claimant where unskilled work was concerned. There was also an objection[] to the job numbers provided by the vocational expert (18E). However, as shown above, the vocational expert testified the claimant could return to work of a skilled or semiskilled level given the physical limitations specified. The hypotheticals the representative relies upon, which would limit the claimant to unskilled work, were not the only hypothetical posed to the vocational expert, and the hypothetical relied upon above included physical and not mental limitations. The vocational expert also testified at the hearing that testimony provided was based on 40 years of professional experience. Since the claimant can perform at the above specified residual functional capacity and the claimant can return to past work, per the vocational expert's testimony, the arguments submitted by the representative are rejected. Since job numbers provided by the representative were not relevant in support of this decision, the objection is overruled as moot.

> Thus, the claimant can return to this past relevant work.

R. 25.

For all these reasons, the Court concludes that the ALJ's finding that Plaintiff can return to her past relevant work and conclusion that Plaintiff is therefore not disabled enjoy substantial support in the record.

35

## V.      CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  February 25, 2022                          _____*s/Norah McCann King*_____
                                                                NORAH McCANN KING
                                                       UNITED STATES MAGISTRATE JUDGE

36